UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDUARDO BENAVIDES, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 09-2026 (RWR) |
| BUREAU OF PRISONS, | ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT**

In its opposition to plaintiff's motion for summary judgment, the Bureau of Prisons (BOP) argues, first, that the routine taping of Mr. Benavides's telephone calls produced records "compiled for a law enforcement purpose" and, thus, meets the threshold requirement for withholding under Exemption 7. BOP also maintains that the recordings — which BOP does not dispute involve conversations between Mr. Benavides and his lawyer about Mr. Benavides's representation — were properly withheld under Exemption 7(C) because their release would constitute an unwarranted invasion of the lawyer's personal privacy. Finally, BOP claims that it has met its burden to show that the recordings are not segregable and, thus, that even the nonexempt portions of the recordings cannot be released to Mr. Benavides. As we now explain, each of these positions is incorrect, and the Court should direct BOP to release the recordings to Mr. Benavides.

**I.     BOP's Telephone Monitoring Did Not Create Records "Complied for Law Enforcement Purposes" Under Exemption 7.**

In our opening memorandum, we explained that the tape recordings here do not meet Exemption 7's threshold requirement that the records be "compiled for law enforcement purposes." *See* Doc. 15-1, at 5–9. Because BOP's opposition largely ignores our argument, we rely mainly on our earlier submission and make only two points.

First, even if we assume (incorrectly) that BOP is primarily engaged in law enforcement, *see* Doc. 17 (hereafter "BOP Opp."), at 2–3, and that "[i]nmate phone calls are monitored to preserve the security and orderly management of the institution and to protect the public," *id.* at 3 (quoting *Butler v. BOP*, 2005 WL 3274573, at *3 (D.D.C. 2005)), BOP does not answer our point that records resulting from "general monitoring," like the routine tape recording here, are not created for a law enforcement purpose under Exemption 7. *See* Doc. 15-1, at 8 (quoting *Doe v. FBI*, 936 F.2d 1346, 1353 (D.C. Cir. 1991)). As the Court of Appeals has put it, BOP cannot cross the Exemption 7 threshold because it has failed to "'identify a particular individual or a particular incident as the object of its investigation and [explain] the connection between that individual or incident and a possible . . . violation of federal law.'" *Citizens for Responsibility and Ethics in Wash. v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 51 (D.D.C. 2006) (quoting *Pratt v. Webster*, 673 F.2d 408, 420 (D.C. Cir. 1982)).

Second, even if we assume (incorrectly) that, for non-attorney phone calls, BOP's routine phone monitoring generates records "compiled for law enforcement purposes" because such monitoring promotes institutional security and public safety, *see* BOP Opp. at 3, that is not the case with recordings of conversations between inmates and their lawyers. Unless a client waives the attorney-client privilege and releases the lawyer from his duty of confidentiality, the client

generally owns conversations with his lawyer, and no third party, including BOP, may have access to them for any purpose. That is presumably why BOP treats monitoring of attorney-client conversations differently from all other telephone monitoring. The agency's regulations provide that BOP "may not monitor an inmate's properly placed call to an attorney," and that the prison must "notify an inmate of the proper procedures to have an unmonitored telephone conversation with an attorney." 28 C.F.R. § 540.102. Thus, it makes no sense to say that recordings of inmate phone calls with their lawyers are compiled for the law enforcement purposes of prison security and public safety when the relevant agency regulation effectively disavows that position, and inmates have the absolute right to avoid monitoring of the calls in the first place.[1]

## II.     Plaintiff's Attorney Has No Personal Privacy Interest in Conversations With His Client, And Therefore The Recordings Are Not Covered By Exemption 7(C).

BOP fails to confront our argument that Mr. Benavides's attorney has no personal privacy interests in the tape recordings at issue here because, as Mr. Benavides' agent, he is Mr. Benavides's alter ego, whose only interests are Mr. Benavides's interests. In our opening brief, we showed that the client, and not the lawyer, owns the communications between the two, and that even the lawyer's file is the client's property, which must be turned over to the client to do with as he pleases. Doc. 15-1, at 10–13. We also showed that this Circuit's law demands that, before Exemption 7(C) can be successfully invoked, the court must determine, at a minimum, that the content of records concern the personal privacy of a third party who has not consented to release of the records. *Id.* at 15-16. We pointed out as well that although 7(C) often protects the

---

[1] BOP relies on 28 C.F.R. § 540.102 in its opposition (at 3), quoting only the part that indicates that the general purpose of monitoring phone calls is to promote prison security and public safety. It omits, however, the part of the regulation that concerns calls between inmates and their lawyers, which is the only part relevant here.

identity of a third party because the mere mention of a name in an investigatory file can undermine privacy interests, that is irrelevant here, where the identity of Mr. Benavides's lawyer is already known, and, in any event, it is hardly stigmatizing for the public to know that a lawyer has telephone calls with clients. *Id.* at 14-15.

BOP ignores all of this and makes only one basic point: Simply because Mr. Benavides's attorney is a third party — that is, because he is not Mr. Benavides — whatever he said to Mr. Benavides is protected by Exemption 7(C). *See* BOP Opp. at 3. That position is inconsistent controlling case law and the logic of Exemption 7(C).

**1.** The relevant facts are now undisputed. Mr. Benavides made FOIA requests for two tape recorded conversations with his lawyer, a Texas criminal law specialist. *See* Doc. 15-2, at 1 (¶¶ 1-2); Doc. 17-1, at 1 (¶¶ 1-2). The sole subject of the conversations was Mr. Benavides's criminal appeal. *See* Doc. 15-2, at 2 (¶ 3). BOP's position is that the subject of Mr. Benavides's conversations is "not relevant to whether the records should be disclosed pursuant to FOIA." Doc. 17-1, at 1 (¶ 3). That is not the law.[2]

We acknowledge that Exemption 7(C) may apply to "any third parties," including the requester's attorney or spouse. BOP Opp. at 4 (citing *Harrison v. Fed. Bureau of Prisons*, 611 F. Supp. 2d 54, 65 (D.D.C. 2009)). Thus, if an attorney is a target of criminal investigation or, for instance, the record discusses the attorney's family life, he might properly invoke 7(C). And it is

---

[2]As explained in the text, BOP's assertion that the subject of the conversations between Mr. Benavides and his lawyer is "not relevant" is legally incorrect. As a factual matter, because BOP failed to dispute our statement of facts regarding the subject of the conversations, *compare* Doc. 15-2, at 2 (¶ 3), *with* Doc. 17-1, at 1 (¶ 3), the court may assume its truth. *See* Local Rule 7(h)(1).

possible (perhaps likely) that a FOIA requester's discussion with his spouse would implicate the spouse's personal privacy.

But the conversations of, or information about, third parties are not automatically exempt from disclosure under FOIA. Indeed, the statute presupposes just the opposite. By exempting records compiled for law enforcement purposes "only to the extent that the[ir] production . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), Congress required the government to assess the *content* of the requested records and then determine whether their release would undermine a third party's personal privacy.

Thus, not surprisingly, virtually every 7(C) cases focuses on the content of the records and asks whether its release would constitute an unwarranted invasion of a third party's privacy. For instance, in *National Archives and Records Administration v. Favish*, 541 U.S. 157 (2004), the Supreme Court held that Exemption 7(C) protected the privacy interests of Vince Foster's family in death-scene photographs of Foster's body, but only after describing the photos themselves, *id.* at 163-64, and quoting record evidence demonstrating that Foster's family had already suffered invasions of personal privacy from release of similar information (including a leaked photograph) and attesting to the likelihood that future releases of graphic depictions of Foster's death would lead to more of the same. *Id.* at 167. By contrast, the Court noted that the district court — which had held exempt the photographs of Foster himself — ordered the release of one photograph that depicted only Foster's eyeglasses, *id.* at 161, which the government "tacitly admit[ted] . . . it had no legal right to withhold." *Favish v. Office of Indep. Counsel*, 217 F.3d 1168, 1172 (2000); *see* Br. for the United States at 6 n.3, in *Office of Indep. Counsel v.*

*Favish*, in No. 02-954 (U.S.), available at 2003 WL 21738777, at *6 n.3 (noting that government complied with order to turn over eyeglasses photo). *See also Washington Post Co. v. DOJ*, 863 F.2d 96, 100 (D.C. Cir. 1988) (Exemption 7(C) distinguishes between material "of 'an intimate personal nature' such as marital status, legitimacy of children, identity of fathers of children, medical condition, welfare payments, alcoholic consumption, family fights, and reputation" and "[i]nformation relating to business judgments and relationships [which] does not qualify for exemption."); Doc. 15-1, at 14–16 (reviewing 7(C) case law). In sum, the content of agency records are not "irrelevant" to an Exemption 7(C) claim, but central to it.

**2.** We end with a simple hypothetical. Suppose that a lawyer, who, for convenience, tapes all of her in-office conversations with clients, sends a note to a client asking whether she should notice an evidentiary hearing at which the client is expected to testify for July 1 or August 1, depending on the client's availability. A few days later, the client stops by the office and meets with the lawyer. The client says "I would prefer July 1," and the lawyer responds, "Okay. We will notice the hearing for July 1." Under BOP's view of Exemption 7(C), release of the conversation could reasonably be expected to invade the lawyer's personal privacy, and, thus, if the client were an inmate, and the conversation had taken place on the phone and been recorded by BOP, it would be exempt from disclosure. Of course, the recordings at issue here are likely more involved, but that should not matter. Suppose, therefore, that the hypothetical client's conversation with her lawyer involved a give-and-take about the relative benefits of noticing the July 1 date — involving the dates on which witnesses would be available, the client's desire to get a decision as soon as possible, and so forth. To be sure, the conversation would be private in the sense that the *client* could expect it to be protected by attorney-client privilege and the

lawyer's duty to protect client confidences, but it would not implicate the *lawyer's* personal privacy. So, too, with the conversations between Mr. Benavides and his lawyer. They concerned Mr. Benavides's case alone, *see* Doc. 15-2, at 2 (¶ 3), and would not reveal anything private about his lawyer. They are therefore not protected by Exemption 7(C).

### III. BOP Has Failed To Justify Its Claim That The Records Are Not Reasonably Segregable.

Mr. Benavides's opening memorandum explained that, even assuming that some portions of the tape recordings are subject to Exemption 7(C), BOP had provided no evidence to support its claim that the nonexempt portions of the recordings are not reasonably segregable. It does no better in its opposition, simply asserting that it does not have "the equipment or capacity to easily and effectively segregate exempt from non-exempt portions" of the requested records. BOP Opp. 4.

**1.** BOP misunderstands FOIA's segregation requirement. FOIA does not require segregation only when it can be done "easily." The test for determining segregability is whether it is "likely that th[e] non-exempt material can be disclosed without compromising the secrecy of whatever exempt information remains," *Mead Data Cent., Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *see also Laborers' Int'l Union of N. Am. v. DOJ*, 578 F. Supp. 52, 58 (D.D.C. 1983) (asking whether "partial disclosure . . . might divulge the very information defendant seeks to protect"). Here, BOP does not argue that release of redacted versions of the tape recordings would divulge their purportedly exempt portions, and that ought to end the matter.

**2.** Even assuming that BOP properly could take into account the technical difficulty of segregating the two tape recordings at issue here, it is the agency, not Mr. Benavides, that bears

the burden of showing that no portion of the requested records is reasonably segregable. *Mead Data Cent.*, 566 F.2d at 260-61.  As noted, BOP claims only that it does not have the equipment or capacity to segregate the records. But an agency's "conclusory statements" that it cannot segregate do not suffice, *id.* at 261, particularly here where the claim is doubtful on its face. After all, it is difficult to imagine that an agency as large as BOP, with a budget exceeding $6 billion and more than 40,000 employees, *see* http://www.justice.gov/jmd/2010summary/pdf/bop-bud-summary.pdf, lacks the wherewithal to edit an audiotape. And it is even more difficult to believe that the Department of Justice, BOP's parent agency, cannot edit audiotapes, whether in response to a FOIA request or for use in investigations or litigation.

  Moreover, BOP is silent on what type of recording is involved, whether magnetic or digital, and, if the latter, what format (for instance, MP3 or WAV). Thus, the agency has not provided the Court or Mr. Benavides any way to assess the magnitude of the claimed technical problem. And, assuming that BOP's FOIA office would, in fact, need to acquire equipment to edit the recordings, BOP does not state what type of equipment is involved, what the equipment would cost, and/or whether the equipment could be obtained from elsewhere in the agency, from DOJ, or from another agency.

  **3.** Given BOP's lack of support for its failure to segregate, its claim is tantamount to saying that FOIA's segregation requirement does not apply to tape recordings, at least not to recordings held by BOP. But that is plainly wrong. FOIA does not distinguish written records from recordings. *See* 5 U.S.C. § 552(b) (last paragraph, first sentence). Rather, it requires that agencies redact — that is, that they segregate exempt from nonexempt material and release the

latter — regardless of the character of the records. And that makes sense. Some FOIA requests seek voluminous documentary records, and redacting them for personal identifiers (Exemption 6 and 7(C)), confidential commercial information (Exemption 4), and privilege (Exemption 5) is the daily grind of agency FOIA officers, necessarily requiring the use of equipment — relatively expensive computers and software for searching electronic records, or simple writing utensils for paper records — to search for and redact exempt material. *See id.* (last two sentences) (specifying how records should be redacted).[3] Thus, in many cases, the real burden of redacting documentary materials would dwarf the supposed burden of redacting the two recordings here, which run 10 minutes and one minute, respectively. *See* Doc. 8-4, Attachment 10, Record Numbers 4 & 5.

   **4.** BOP's segregability argument is difficult to assess because the agency has not met its burden of specifying which portions of the documents do and do not implicate the supposed privacy interests of Mr. Benavides's lawyer that give rise to BOP's Exemption 7(C) claim. In our view, the only permissible redactions would involve those parts of the conversations, if any, that reveal something about the lawyer's private life, unrelated to his representation of Mr. Benavides. BOP mentions in passing that if it were to "releas[e] one side of a telephone conversation" — seemingly an oblique reference to what Mr. Benavides said to his lawyer —

---

[3]*See, e.g., Bonner v. U.S. Dept. of State*, 928 F.2d 1148, 1149 (D.C. Cir. 1991) (government identified 4,641 responsive documents, 2,827 of which were released in full, 1,033 of which were released with portions redacted, and 743 of which were completely withheld); *Merit Energy Co. v. U.S. Dept. of Interior*, 180 F. Supp.2d 1184, 1186 (D. Colo. 2001) (involving 3900 pages of records, including both paper records and computer disks, 2800 pages of which were redacted under Exemptions 4 and 5); *see also, e.g., Gov't Accountability Project v. U.S. Dept. of Health and Human Servs.*, 568 F. Supp.2d 55, 57, 60 (D.D.C. 2008) (describing how the Food and Drug Administration manages its FOIA docket, including "complex requests" that require extensive review and redaction).

"words and phrases would be out of context and potentially misleading." BOP Opp. \at 5 (citing *McMillian*, 2004 WL 4953170, *7-*8 (D.D.C. 2004)). That reasoning is doubly misguided.

First, once BOP has acknowledged that Mr. Benavides's part of the conversations does not implicate his lawyer's personal privacy interests — and BOP does not argue otherwise — it is difficult to imagine how the lawyer's side of the conversation does so either. As explained earlier, the lawyer spoke to Mr. Benavides not on his own behalf, but on Mr. Benavides's behalf, and the conversations concerned Mr. Benavides's case.

Second, under FOIA, in assessing segregability, the court does not ask paternalistically whether redacting exempt material may be "misleading" or cause the information to appear "out of context." It should go without saying, for instance, that a document drained of its deliberative material because of Exemption 5 redactions may no longer be entirely accurate and could thus mislead the reader about how the government assessed the released information. *See, e.g., Mead Data Cent.*, 566 F.2d at 256-57.  But, under FOIA, as in the First Amendment context, the government may not bar the release of everything on the ground that partial disclosure might confuse the public. *See Bates v. State Bar of Ariz.*, 433 U.S. 350, 374-75 (1977).

To be sure, a court may fairly consider whether the requested records are overwhelmingly exempt and, thus, whether a costly "line-by-line analysis" to reveal nonexempt material would render the records an "essentially meaningless set of words and phrases." *Mead Data Cent.*, 566 F.2d at 261. But, here, BOP does not contend, not could it, that segregation would render the recordings gibberish. Rather, segregation would, like most redactions, simply render the recordings incomplete and thus not as accurate as they would be if they were released in full.

\* \* \*

For all of these reasons, BOP has failed to meet its burden to show that the records are not reasonably segregable. We acknowledge that our arguments regarding segregability are somewhat artificial, and that, to some degree, we are straining to posit plausible arguments only to knock them down. But that is hardly our fault. It is a consequence of BOP's conclusory, unexplained assertion that it cannot segregate two short tape recordings and, more fundamentally, BOP's inability — indeed, its failure even to attempt — to articulate a lawyer's personal privacy interest in a discussion with his client solely about the client's case. Put another way, BOP has been unable to justify its failure to segregate because it cannot justify its claim of exemption in the first place.

## CONCLUSION

The plaintiff's motion for summary judgment should be granted, and BOP should be directed to release the relevant recordings to Mr. Benavides as FOIA requires.

                                         Respectfully submitted,

                                         /s/ Brian Wolfman
                                         Brian Wolfman
                                         ( D.C. Bar No. 427491)
                                         Institute for Public Representation
                                         Georgetown University Law Center
                                         600 New Jersey Ave., NW, Rm. 312
                                         Washington, DC 20001
                                         Phone: (202) 661-6582
                                         Fax: (202) 662-9634

May 20, 2010                           Attorney for Plaintiff